**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SADE ABDULKADIR ISSE,<br>Plaintiff,<br>v.<br>MARGARET WHITMAN, *et al.*,<br>Defendants. | Civil Action No. 22-3114 (BAH)<br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Sade Abdulkadir Isse, a citizen of Somalia currently residing in Kenya, seeks to compel defendants, the U.S. Ambassador to Kenya and the Secretary of State, in their official capacities, to adjudicate his visa application. *See* Compl. ¶¶ 1, 16, ECF No. 1. Plaintiff's wife, Bello Abdule Hirsi, filed an I-130 application on plaintiff's behalf in January 2017. *Id.* ¶ 1. By December 2022, plaintiff had not yet received a final decision, prompting his filing of this suit, alleging that defendants have unreasonably delayed his visa application under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 and 701, *et seq.*, and the Mandamus Act, 28 U.S.C. §§ 1331 and 1361, *et seq*. *See* Compl. ¶ 31. Defendants now move to dismiss for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 6. For the reasons explained below, defendants' motion is granted.

## I. BACKGROUND

A review of the statutory and regulatory background underlying the claims is below, followed by a summary of the factual and procedural history of this case.

### A. Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, allows for the issuance of immigrant visas, including for relatives of U.S. citizens.  8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1); 8 C.F.R. § 204.1(a)(1), (b).  A U.S. citizen seeking permanent resident status for a spouse or other family member may fill out a Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS").  8 U.S.C. §§ 1154, 1151(b)(2)(A)(i) (defining a spouse as an "immediate relative" of a citizen for the purposes of Form I-130 petitioners); 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC") for processing.  *Id.* § 204.2(a)(3).  The NVC serves as the visa application processing center for the U.S. Department of State ("State Department").  *Id.*

Following approval of the petition, the foreign spouse must submit paperwork and processing fees to the NVC.  *See* 22 C.F.R. § 42.67 (outlining application fees and additional documentation that an applicant must submit to the NVC to complete their application, including an oath and a signature on Forms DS-230 and DS-260, a "[f]orm of attestation for certain repeat applications due to COVID-19," registration requirements, and fingerprints).  NVC then schedules a consular interview for the applicant at the embassy with jurisdiction over the applicant's residence.  *Id.* § 42.62.  The consular officer must either issue or refuse the visa following the interview.  *Id.* § 42.81(a).

**B.  Factual Background**

In January 2017, Hirsi filed an I-130 visa petition with USCIS on behalf of her husband and paid the fees associated with the visa application process.  Compl. ¶¶ 1, 9, 22.  Hirsi aimed to secure lawful permanent resident status for her husband, a refugee living in Kenya, to allow him to join her in the United States.  *Id.* ¶¶ 1, 10.  USCIS received the petition in good order.  *Id.* ¶ 9 (showing petition receipt number); *Case Status Online,* U.S. CITIZENSHIP & IMMIGRATION SERVS.,

https://perma.cc/GX4B-QVNC (showing plaintiff's case status, based on USCIS receipt number, as "My Case was Received"). USCIS approved plaintiff's visa petition in May 2017, and he was granted a consular interview at the U.S. Embassy in Kenya in April 2019. Compl. ¶¶ 9, 11; *see also* 22 C.F.R. § 42.62 (requiring every U.S. immigrant visa applicant to submit to an interview by a consular official for "execution of the application"). Following his interview at the Embassy, plaintiff was informed that his visa application was being placed in "administrative processing." Compl. ¶ 12. Despite numerous inquiries, plaintiff received no further updates on his visa application for nearly four years following the interview. *Id.* ¶ 13. As of June 2023, plaintiff's application for an immigrant visa to the United States appears to have been refused, *see id.* ¶ 9 (identifying plaintiff's State Department visa application number (NRB2017693019)); *Visa Status Check*, U.S. DEP'T OF STATE, https://perma.cc/T225-GHH7 (showing plaintiff's case status, based on the provided application number, as "REFUSED,"), though the same page on the State Department's website suggests that his application remains subject to additional administrative processing before a final decision is rendered, *see id.* ("If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. You will receive another adjudication once such processing is complete.").

In March 2020, the State Department suspended visa processing services at every U.S. Embassy due to the COVID-19 pandemic. *Suspension of Routine Visa Services*, U.S. DEP'T OF STATE, https://perma.cc/9EUT-5UTX (July 22, 2020).[1] As the global effects of the pandemic lessened, the State Department allowed embassies gradually to resume visa processing activities, granting each embassy discretion in the process based on its individual capacity and safety

[1] Judicial notice is appropriately taken of information posted on government agencies' official public websites. *Cannon v. Dist. Of Columbia,* 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

considerations. *Visa Services Operating Status Update*, U.S. DEP'T OF STATE, https://perma.cc/RW3C-4KYL (Nov. 19, 2021). The goal of this policy was to allow each embassy to use on-the-ground information to assess the current COVID-19 situation of the country where the embassy is located. *Id.* As a result of these safety procedures, the State Department and U.S. embassies still face a significant backlog of visa applications. *See National Visa Center (NVC) Immigrant Visa Backlog Report*, U.S. DEP'T OF STATE, https://perma.cc/HD67-HPYW. As of May 2023, nearly 400,000 immigrant visa applications are "documentarily" complete but still await final adjudication. *Id.* This backlog has created substantial delays in processing and wait times for visa applicants, including at the U.S. Embassy in Kenya. *See U.S. Visa Services*, U.S. EMBASSY IN KENYA, https://ke.usembassy.gov/visas/ (last visited May 26, 2023). Even with the delays, the Embassy maintains that it is "working diligently to reduce wait times in all visa categories as quickly and safely as possible." *Id.*

Meanwhile, plaintiff's delay in receiving a final decision on his visa petition has had a "profound and negative impact" on his life. Compl. ¶ 15. Plaintiff's separation from his wife and young children has created "significant personal, financial, and emotional hardship" on his entire family. *Id.* ¶ 1. Aside from phone calls made more burdensome by an eight-hour time difference, plaintiff has been unable to interact with his young children during a formative time in their lives. *Id.* The stress of the separation from his spouse and children has caused plaintiff significant health issues, including hypertension, anxiety, depression, and stress. *Id.* The separation has also caused economic hardship on plaintiff and his wife: Plaintiff's wife must support the entire family financially, working and caring for the couple's children without assistance, and she has also spent nearly $15,000 in travel costs to visit plaintiff three times during their separation. *Id.* To make

matters worse, plaintiff enjoys no legal status or family support in Kenya, as he is only in that country to facilitate the processing of his visa application. *Id.*

### C. Procedural Background

Plaintiff filed a two-count complaint on October 13, 2022, to "compel Defendants to take action on and adjudicate his properly-filed visa application." Compl. ¶ 1. Plaintiff maintains that defendants retain jurisdiction over plaintiff's visa application and that defendants have "unreasonably and improperly withheld action" to process that application, causing harm to plaintiff. *Id.* While plaintiff argues that defendants "owe a non-discretionary duty to adjudicate [his] immigration case," plaintiff does not seek review of any final decision by defendants on the application; instead, he seeks only adjudication of his visa application under the APA, *id.* ¶¶ 2, 9-25, and the Mandamus Act, *id.* ¶¶ 26-31. In his Prayer for Relief, plaintiff requests final adjudication of his visa application within fifteen calendar days and attorney's fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504, *et seq.*, and 28 U.S.C. § 2412, *et seq*. Compl. ¶ 3.

On January 23, 2023, defendants moved to dismiss plaintiff's complaint, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. at 1. With briefing complete, *see* Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 7; Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply"), ECF No. 9, defendants' motion is ripe for resolution.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C.

Cir. 2017) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff thus "bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

When a jurisdictional argument "present[s] a dispute over the factual basis of the court's subject matter jurisdiction, . . . the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss. *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). The court must accept as true "material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). In addition, however, the "court may properly consider . . . evidentiary material in the record," again affording the plaintiff "the benefit of all reasonable inferences." *Feldman*, 879 F.3d at 351.

**B. Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations

as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Courts do not, however, "assume

the truth of legal conclusions … nor … accept inferences that are unsupported by the facts set out

in the complaint." *Arpaio*, 797 F.3d at 19 (internal citation omitted). "In determining whether a

complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any

documents either attached to or incorporated in the complaint and matters of which [courts] may

take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St.

Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

## III.    DISCUSSION

Defendants advance two main arguments to dismiss the complaint, contending, first,

subject matter jurisdiction is lacking to adjudicate this dispute under the doctrine of consular

nonreviewability, Defs.' Mot. at 5, 11; and, second, that, even if not barred for lack of subject

matter jurisdiction, plaintiff's claims still fail to state viable claims for relief for unreasonable delay

under the Mandamus Act and the APA, *id*. at 3, 9. While the doctrine of consular nonreviewability

does not preclude judicial review of plaintiff's claims because he seeks only procedural, not

substantive, relief, his complaint nonetheless fails on the merits because the delay in resolving

plaintiff's visa application, given the backlog resulting from the pandemic, is not unreasonable as

a matter of law. Accordingly, defendants' motion to dismiss is granted.

### A. The Doctrine of Consular Nonreviewability Does Not Bar Review of Plaintiff's Visa Application Because a Consular Officer Has Not Rendered a Final Decision.

Defendants first allege that the doctrine of consular nonreviewability precludes judicial

review of plaintiff's case. Defs.' Mot. at 5. Specifically, defendants assert that "the consular

official has decided not to issue a visa in response to the visa application[,] [making] [t]hat decision

[ ] immune from review in this court" under the doctrine. Defs.' Mot. at 8. Yet, the procedural

posture of plaintiff's visa application, though marked "refused," is that the application is still

undergoing additional administrative processing.  Thus, no final decision has apparently been made, with the result that the doctrine of consular nonreviewability does not bar judicial review of plaintiff's claims.  *See Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 20 (D.D.C. 2022); *accord Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *3–4 (D.D.C. Jun. 10, 2020).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, gives consular officers "exclusive authority" to review and adjudicate visa applications.  *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999) (citing 8 U.S.C. §§ 1104(a), 1201(a)).  Given the "political nature of visa determinations and the lack of any statute expressly authorizing judicial review of consular officers' actions," "courts are without authority to displace the consular function in the issuance of visas."  *Id.* at 1159, 1164 (quoting *City of New York v. Baker*, 878 F.2d 507, 512 (D.C. Cir. 1989)).  The limitation on courts' ability substantively to review a consular officer's final decision on a visa application is known as the "doctrine of consular nonreviewability."  *Id.* at 1159; *see also Castaneda-Gonzalez v. INS*, 564 F.2d 417, 428 n.25 (D.C. Cir. 1977) (observing that "a consular officer could make . . . a decision [to deny a visa] without fear of reversal since visa decisions are nonreviewable").

The consular nonreviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review."  *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021).  The doctrine of consular nonreviewability does not, however, "insulate a delay in reaching" final decisions on visa applications "from judicial review."  *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020); *see also Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997) ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review.  However, when the suit challenges the authority of the consul to take

or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists."). An assessment of whether the government has delayed action on a particular visa application is not the type of political consideration that the consular nonreviewability doctrine aims to avoid, and that assessment is not "an area 'in which legislative action [and] traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination.'" *Saavedra Bruno*, 197 F.3d at 1160 (citation omitted). Furthermore, the government cannot elevate "form over substance" when it comes to rendering a final decision on a visa application, and thus the focus in a consular nonreviewability case must be "on what is actually happening." *Vulupala*, 438 F. Supp. 3d at 98.

Resultantly, "the doctrine of consular nonreviewability is not triggered" when "a consular officer" has not rendered a final decision and the visa application remains under consideration. *Nine Iraqi Allies Under Serious Threat Because of their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016). Here, plaintiff does not request review of a final State Department adjudication on his visa, but only to compel agency action on his application. Pl.'s Opp'n at 11–12. Since plaintiff seeks only procedural, and not substantive, review of his visa process, the consular nonreviewability doctrine does not apply, and jurisdiction exists to adjudicate plaintiff's claim. *See Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 92 (D.D.C 2020) (explaining that, while the consular nonreviewability doctrine would bar review of a "consular officer's decision . . . to refuse [the applicant's] visa application," it does not bar "review of the government's failure to adjudicate [plaintiff's] waiver eligibility . . . the failure to *make a decision*") (emphasis in original).

*Al-Gharawy v. United States Department of Homeland Security* is instructive and persuasive here. In that case, the plaintiffs' visa applications had been similarly "refused," but the

court rejected the defendants' argument to dismiss the plaintiffs' claims for relief under the Mandamus Act and the APA under the doctrine of consular nonreviewability. 617 F. Supp. 3d at 16. The court explained that "the factual allegations in the complaint . . . indicate that no final decision has been made with respect to [the] [p]laintiffs' visa applications" because the plaintiffs were told that their applications needed "further administrative processing," and they had made several requests "regarding the status of their visa applications, only to be told that their '[v]isa application[s] [were] refused . . . for administrative processing.'" *Id.* at 16 (alterations in original). The court reasoned that, although the "consular nonreviewability doctrine applies to a consular officer's *substantive* decisions to approve or deny a visa application, that same reasoning does not extend to the *procedural* considerations at issue." *Id.* at 12 (emphasis in original). Given that the plaintiffs were not requesting the court "to second guess the Executive in exercising [] the sovereign powers to exclude aliens," but were merely requesting the agency be compelled to take a final action on their visa applications, *id.* at 13, the mere fact that the plaintiffs' visa applications were refused did not preclude judicial review under the doctrine of consular nonreviewability, *id.* at 16–17.

Just like the plaintiffs in *Al-Gharawy*, plaintiff's "refused" application here is not a final decision on his application because, as plaintiff's Complaint makes clear, he was informed that his visa application is still undergoing "administrative processing." Compl. ¶ 12. Moreover, plaintiff's case status on the State Department's website expressly provides that if plaintiff was informed "by the consular officer that [his] case was refused for administrative processing, [his] case will remain refused *while undergoing such processing*," and he "will receive *another adjudication* once such processing is complete." *Visa Status Check*, U.S. DEP'T OF STATE, https://perma.cc/T225-GHH7 (emphasis added). Given that plaintiff is awaiting a final decision

on his visa application, and he has received "no meaningful response" regarding the status of the application despite inquiring about its status "on numerous occasions," Compl. ¶¶ 8, 13, the consular nonreviewability doctrine does not bar review since the "refusal" plaintiff received "was merely provisional, with a final decision yet to come." *Al-Gharawy*, 617 F. Supp. 3d at 16.

Defendants make no effort to distinguish the facts in *Al-Gharawy*, and instead argue that *Al-Gharawy* was incorrectly decided, reasoning that the doctrine of consular nonreviewability "shields a consular official's decision to issue or *withhold* a visa from judicial review," *Baan Rao*, 985 F.3d at 1024 (emphasis added), so the consular officer's decision "not to issue a visa in response to the visa application . . . is immune from review[.]" Def.'s Mot. at 6–8. Defendants' reliance on the "withhold" language in *Baan Rao*, however, is a misfire. As the court observed in *Al-Gharawy*, 617 F. Supp. 3d at 15, *Baan Rao* does not stand for the proposition advanced by defendants because that case concerned a final consular decision to deny visa applications on substantive grounds, *see* 985 F.3d at 1023 ("[T]he Embassy denied [plaintiffs'] applications, concluding both did not meet all of the requirements of an E-2 essential employee as specified in [the Department of State's Foreign Affairs Manual].") (second alteration in original) (quotation marks omitted)—which is a formal, substantive decision in contrast to a temporary hold status that is marked as "refusal" by a consular officer, *see Al-Gharawy*, 617 F. Supp. 3d at 14 (making this observation). The D.C. Circuit in *Baan Rao* was thus not opining on whether the doctrine of consular nonreviewability precluded judicial review of "refused" visa applications that remains subject to additional administrative processing, but rather whether a final decision on the merits of a visa application precluded judicial review.

Accordingly, the doctrine of consular nonreviewability does not preclude judicial review of plaintiff's visa application.[2]

**B. The Alleged Delay in Decision on Plaintiff's Visa Application is Not Unreasonable, So Plaintiff's Claim Must Be Dismissed for Failure to State a Claim**

Alternatively, defendants argue that plaintiff has failed to state a claim because "any delay [on his visa application] here is not unreasonable as a matter of law." Defs.' Mot. at 9. As defendants point out, a writ of mandamus to compel agency action "starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act. In the case of agency inaction, we not only must satisfy ourselves that there indeed exists such a duty, but that the agency has 'unreasonably delayed' the contemplated action." *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) (quoting the Administrative Procedure Act, 5 U.S.C. § 706(1)).

The D.C. Circuit has enumerated six factors to consider when determining whether a delay in agency action is unreasonable, known as the "*TRAC* Factors":

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human

---

[2] Defendants also claim that dismissal is warranted because the defendants named are officials who cannot provide the requested relief, Def.'s Mot. at 3–5, but this argument is not persuasive. At the outset, defendants make the puzzling argument that officials from the Department of Homeland Security and Department of Justice either "have no role in adjudicating the request [sic] visa or they completed their role in the process," Defs.' Mot. at 3, yet no such officials from those two agencies are named; rather, plaintiff names only the U.S. Ambassador to Kenya and the Secretary of State. Compl. at 1. Defendants further contend that the Secretary of State cannot provide plaintiff any relief because the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" Def.'s Mot. at 4 (quotation marks and emphasis omitted) (quoting *Baan Rao*, 985 F.3d at 1024). *Baan Rao*, however, does not support defendants' argument because "[c]ontrol over a consular officer's visa *determinations*—that is, her decisions to 'grant[ ], deny[,] [or] revok[e] . . . immigrant and non-immigrant visas,'—is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting *Saavedra Bruno*, 197 F.3d at 1156) (emphasis in original). Defendants have identified no authority to suggest that the Secretary of State cannot direct consular officers within the State Department to issue a final decision more quickly on plaintiff's visa application, so this argument is rejected.

> health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984) (citations and internal formatting omitted).

Plaintiff argues that, due to the fact-intensive nature of the *TRAC* inquiry, evaluation of the factors is not appropriate at the motion to dismiss stage. Pl.'s Opp'n at. 15. The D.C. Circuit has similarly warned that "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("*Mashpee*"). Nevertheless, courts in this circuit have employed the *TRAC* factors at the motion to dismiss stage to determine "whether a [plaintiff's] complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *7 n.6; *see also Bagherian*, 442 F. Supp. 3d at 94–95 (employing the *TRAC* factor analysis during the motion to dismiss stage); *Sarlak*, 2020 WL 3082018, at *5 (same); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 175-76 (D.D.C. 2017) (same).[3] As in those cases, the record here provides enough factual background to evaluate the *TRAC* factors and find that plaintiff's complaint fails to state a claim that action on his visa has been unreasonably delayed.

**1. *TRAC* Factors 1 & 2**

---

[3] When limited factual information is available in the record, some courts have determined that the *TRAC* factor analysis is premature at the motion to dismiss stage. *See, e.g.*, *Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 117 (D.D.C. 2020); *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020). Here, however, the record provides sufficient factual information to apply the *TRAC* factor analysis.

The first and second *TRAC* factors weigh in defendants' favor because the delay in adjudicating plaintiff's visa application—around forty months—is not unreasonable.[4] These two factors are typically considered in conjunction, with the first factor being considered the most important. *In re Core Commc'ns Inc.*, 531 F.3d 850, 855 (D.C. Cir. 2008); *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

Congress tends to give agencies "wide" discretion in their visa processing timelines. *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (finding that a two-year delay in processing a visa application is not unreasonable). In fact, "no statutory or regulatory timeframe [exists] within which the State Department or a consular officer must re-adjudicate visa applications." *Id.* "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak*, 2020 WL 3082018, at *6. Even though courts have drawn no bright lines to determine reasonableness, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Yavari v. Pompeo*, No. 19-cv-02524 (SVW), 2019 WL 6720996, at *8 (C.D. Cal. Oct. 10, 2019) (citing *Siwen Zhang v. Cissna*, No. 18-cv-9696 (MWF), 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019)). Reasonableness in this context also "cannot be decided in the abstract, by reference to some number of months or years beyond which agency action is presumed to be unlawful, but will depend in large part . . . upon the complexity of the

---

[4]      Plaintiff alleges a six-year delay in the adjudication of his visa application because he filed his application six years ago. Pl.'s Opp'n at 5. The proper method for calculating delay, however, is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint. *See, e.g. Arab v. Blinken*, 600 F. Supp. 3d 59, 68 n.7 (D.D.C. 2022) (determining that the delay was thirty months by calculating the time difference between "[t]he last government action on this matter" and the date the complaint was filed); *Rahimian v. Blinken*, No. 22-cv-785 (BAH), 2023 WL 143644, at *7 (D.D.C. Jan. 10, 2023) (evaluating unreasonable delay of a visa application based on the time between the last action on the application—when USCIS approved plaintiff's visa petition—and when plaintiff's complaint was filed). The last action taken on plaintiff's visa application was his consular interview in Kenya in April 2019, so the time between that action and the date plaintiff filed this suit (October 2022) is approximately forty months.

task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee*, 336 F.3d at 1102.

Not only does the delay in plaintiff's visa adjudication fall at least twenty months short of the five-, six-, and seven-year delay found to be potentially unreasonable in *Yavari*, but that case was decided prior to the global pandemic. Consideration of agency resources and the context of an agency action is critical to the determination of reasonableness. *Id.*; *see also Tate v. Pompeo*, 513 F. Supp. 3d 132, 150–51 (D.D.C. 2021) (finding that the government's determination of "how to allocate scarce resources in a global pandemic outweigh[s] [visa applicants'] interests in immediate adjudication of their visas"). Less than a year after plaintiff's consular interview, U.S. consulates and embassies shut down across the globe due to the COVID-19 pandemic. The ensuing backlog of visa applications and the ongoing importance of public health considerations in consular operations continue to affect the processing of immigration procedure today. The visa backlog due to the COVID-19 pandemic might even further stretch the time window outlined in *Yavari*, given the strain on agency resources following the health crisis. These circumstances further weigh in defendants' favor. *See Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *3 (D.D.C. Feb. 16, 2022) (finding that "operational delays due to the COVID-19 pandemic favor the government on the first two [*TRAC*] factors"); *Rahimian*, 2023 WL 143644, at *7 (same); *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (same); *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021) (same).

**2. *TRAC* Factors 3 & 5**

The third and fifth *TRAC* factors are related and together examine "the nature and extent of the interests prejudiced by the delay," including whether "human health and welfare" might be

implicated. 750 F.2d at 80. Plaintiff has faced serious personal hardship from the delay of his visa adjudication and so, contrary to defendants' assertion, *see* Defs.' Mot. at 15, these factors weigh in his favor.

Prolonged separation from a spouse, fiancé, or other immediate family member may be considered a risk to human health and welfare. *See Didban*, 435 F. Supp. 3d at 177 (finding the third and fifth *TRAC* factors to weigh in favor of plaintiff given the continued separation of spouses); *see also Bagherian*, 442 F. Supp. 3d at 95 (conceding that plaintiff's long separation from her family threatened her health and welfare). Plaintiff and his family have suffered serious financial and emotional consequences because of their long-term separation; in addition, the separation has caused plaintiff to suffer ongoing physical health issues and stress. Compl. ¶ 1.

Defendants do not contest that plaintiff's own wellness has been negatively affected by the long separation from his family. Nonetheless, they maintain that the third and fifth factors weigh in its favor because expediting review in plaintiff's case may cause harm to the health and welfare of those visa applicants whose applications would be further delayed by expediting plaintiff's application. Defs.' Mot. at 15. Defendants contend that, in the aggregate, delaying those other applications in favor of plaintiff's would "direct resources away from the adjudications that the State Department has identified as more urgent." *Id.*

Even if defendants' point about resource allocation may be true, courts frequently examine the individual health or welfare of a specific plaintiff when evaluating *TRAC* factors three and five. *See*, *e.g.*, *Rahimian*, 2023 WL 143644, at *8; *Sarlak*, 2020 WL 3082018, at *6 (similar). Thus, considering the harm done to this particular plaintiff if his visa application is delayed is appropriate in evaluating *TRAC* factors 3 & 5.

**3. *TRAC* Factor 4**

The fourth *TRAC* factor considers whether "expediting delayed action" will have a harmful effect on "agency activities of a higher or completing priority." *TRAC*, 750 F.2d at 80. Defendants correctly point out that this factor carries "significant weight" in the *TRAC* analysis. Defs.' Reply at 10; *see Mashpee*, 336 F.3d at 1100. This factor weighs heavily in defendants' favor, particularly in context of the ongoing recovery efforts from the COVID-19 pandemic.

Granting expedited agency action is considered inappropriate when that relief "would simply 'reorder' a queue of applicants seeking adjudication" and when no concomitant "'net gain' in adjudications is achieved." *Tate*, 514 F. Supp. 3d at 149 (quoting *In re Barr Labs., Inc.,* 930 F.2d 72, 75 (D.C. Cir. 1991)). In particular, "where resource allocation is the source of the delay, courts have declined to expedite action because of the impact on competing priorities." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005).

Plaintiff claims that he is "not asking to be put ahead in line of other. Rather, he is merely asking that the Government engage in normal processing of his visa." Pl.'s Opp'n at 19. Post-pandemic, such normal processing means accommodating the backlogs of the hundreds of thousands of visa applications still awaiting adjudication due to staffing and resource shortages arising during the height of the COVID-19 pandemic. Expediting review in plaintiff's case "would merely pull government resources" away from other visa adjudications and agency business. *Bagherian*, 442 F. Supp. 3d at 95; *see also Didban*, 435 F. Supp. 3d at 176 (holding that reordering agency business "would impermissibly interfere with the agency's 'unique' and 'authoritative [ ] position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way'" (quoting *In re Barr Labs., Inc.*, 930 F.2d at 76)); *see NVC Immigrant Visa Backlog Report*, U.S. DEP'T OF STATE, https://perma.cc/HD67-HPYW (providing data and information about the backlog in visa applications still faced by the Department of State post-

pandemic). In addition, plaintiff advances no explanation for why other visa applications should be further delayed to expedite his own. Since the D.C. Circuit recognizes "no basis for reordering agency priorities," *In re Barr Labs., Inc.*, 930 F.2d at 76, this factor weighs in favor of defendants.

**4. *TRAC* Factor 6**

The sixth and final *TRAC* factor is neutral. This factor states that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (quoting *Pub. Citizen Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 34 (D.C. Cir. 1984)). While plaintiff alleges that the State Department could and should have been more forthcoming with information about his visa application timeline, he does not go so far as to allege any bad faith on the part of the agency or its staff. *See* Pl.'s Opp'n at 23-24. While plaintiff is understandably frustrated with the visa application process given his long separation from his family and wife, the delay alone does not demonstrate any agency misconduct.

**5. *TRAC* Factors Considered in Totality**

Taking all six *TRAC* factors as a whole, plaintiff has not stated a claim under the Mandamus Act or the APA for unreasonable delay. *See Rahimian*, 2023 WL 143644, at *9 (reaching the same conclusion); *Logan*, 2022 WL 3715798, at *7 (same); *Arab*, 600 F. Supp. 3d. at 72 (same); *Zaman*, 2021 WL 5356284, at *6–8 (same); *Sarlak*, 2020 WL 3082018, at *6 (same). The reasoning found in prior caselaw, the context of agency resource backlogs stemming from the COVID-19 pandemic, and the fact that granting plaintiff relief would merely reorder his application in the queue, all support the conclusion that the delay in adjudication of plaintiff's visa is not unreasonable. While *TRAC* factors three and five do weigh somewhat in plaintiff's favor, a holistic review of the factors does not allow these two to eclipse the rest. In this situation, "the

government's interests in balancing its own priorities" outweighs the individual harm done to plaintiff and his family as they await a final decision. *Milligan*, 502 F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96). This Court has deep sympathy for plaintiff and his family during their separation, but must also recognize that countless other families are facing similarly difficult circumstances as they await immigration decisions. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016) (collecting cases "reject[ing] mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").

## IV. CONCLUSION

For the reasons given, defendants' motion to dismiss is granted. An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: June 26, 2023

BERYL A. HOWELL
U.S. District Court Judge